IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00766-LTB-CBS

CARL N. O'DONNELL,
    Applicant,
v.

ARI ZAVARAS, Executive Director of Prisons, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,
    Respondents.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

This civil action is before the court on Mr. O'Donnell's "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2254" ("Petition") (filed April 16, 2007) (doc. # 2). Pursuant to the Order of Reference dated May 8, 2007 (doc. # 9), this civil action was referred to the Magistrate Judge to, *inter alia*, "submit proposed findings of fact and recommendations . . . ." The court has reviewed the Petition, Respondents' Answer (filed May 22, 2007) (doc. # 13), the pertinent parts of the state court record, the entire case file, and the applicable law, and is sufficiently advised in the premises.

I.  Background

Mr. O'Donnell is currently incarcerated at the Colorado Territorial Correctional Facility of the Colorado Department of Corrections in Canon City, Colorado. On March 10, 2004, a jury in Arapahoe County convicted Mr. O'Donnell of one count of attempted

1

robbery and one count of attempted theft based on his attempt to rob a bank in Englewood, Colorado on July 16, 2002. "At the sentencing hearing on April 13, 2004, Mr. O'Donnell pleaded guilty to the habitual criminal counts pursuant to a sentencing agreement, which provided that in exchange for his guilty plea he would receive concurrent sentences." (Respondents' Exhibit A (doc. # 13-2) at p. 9 of 40). Mr. O'Donnell was sentenced as an habitual criminal to concurrent twelve-year prison terms. (*See id.*).

On direct appeal, a division of the Colorado Court of Appeals ("Court of Appeals") affirmed the judgment of conviction, with one judge dissenting in part, and remanded the case to the trial court for correction of the mittimus. (*See People v. O'Donnell*, 04CA1051(Colo. App. April 6, 2006) (not published pursuant to C.A.R. 35(f)) (Respondents' Exhibit D (doc. # 13-3 at pp. 31-41 of 41 and doc. # 13-4 at pp. 1-8 of 52))). On August 28, 2006, the Colorado Supreme Court denied Mr. O'Donnell's Petition for Writ of Certiorari, with one justice who would have granted the petition. (*See* Respondents' Exhibit F (doc. # 13-4) at p. 50 of 52). The Court of Appeals issued its mandate on August 31, 2006. (*See* Respondents' Exhibit G (doc. # 13-4) at p. 52 of 52).

Mr. O'Donnell filed this Petition in federal court on or about April 16, 2007, raising two claims: (1) that he was denied his "right to a fair trial by a panel of impartial jurors" when the trial court denied his challenge for cause to a prospective juror who expressed bias against defense counsel; and (2) that the Colorado Court of Appeals "incorrectly reasoned that the trial court did not abuse its discretion when denying" his

2

challenge for cause to a prospective juror. (*See* Petition (doc. # 2) at pp. 5,6, 11-13 of 34).

A.	One-Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).

B.	Exhaustion of State Remedies and Procedural Default

"A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). Before a state prisoner may raise a federal constitutional claim attacking his state conviction in a federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he or she must have first exhausted state remedies and provided the state courts with a fair opportunity to apply controlling legal principles to facts bearing on the constitutional claims. *Miranda v. Cooper*, 967 F.2d 392, 397 (10th Cir. 1992). This principle has been codified in 28 U.S.C. § 2254(b)(1). Respondents do not argue that Mr. O'Donnell has failed to exhaust his state remedies prior to filing the Petition.

C.	Merits of Mr. O'Donnell's Claims

1.	Standard of Review

Mr. O'Donnell filed this habeas proceeding after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Consequently, federal

review of the Petition is governed by the standards set out in 28 U.S.C. § 2254(d) and (e), as amended by the AEDPA. *Williams v. Taylor*, 529 U.S. 362, 402 (2000). *See also Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)").

Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases, or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. . . ."

*Price*, 538 U.S. at 640. In determining whether the state court decision "involved an unreasonable application of clearly established Federal law,"

> a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

*Price*, 538 U.S. at 640-41 (internal quotation marks and citations omitted).

4

When applying § 2254(d)(2), "the factual issues decided by the [state] court are presumed to be correct and [Mr. O'Donnell] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). *See also Fields v. Gibson*, 277 F.3d 1203, 1215-16 (10th Cir.) (If the court treats the issue as a factual determination under § 2254(d)(2) and (e)(1), it must ask whether the petitioner has "rebutted the presumption of correctness by showing, by clear and convincing evidence, that the state court's decision was an unreasonable determination of the facts.").

2. Analysis

Mr. O'Donnell's two claims essentially raise the same issue: that the trial court erred in denying his challenge for cause to a prospective juror and that the Court of Appeals incorrectly concluded that the trial court did not abuse its discretion in denying his challenge for cause to the prospective juror.

The record provides the circumstances as follows.

> Here, the prospective juror initially indicated frustration with one of defense counsel's voir dire questions, stating, 'I don't believe that's a valid question that we can answer honestly.' The prospective juror later indicated that she had concerns about being a juror in the case. Outside the presence of the rest of the jury pool, she stated that she might be taking her concern 'too seriously,' but that she was 'vacillating between feeling pity for [defendant] because [she did] not believe that he's receiving equal representation, and feeling very offended by [defense counsel].'
>
> The court asked the prospective juror whether she had a prejudice against defense counsel. She stated that she was having a strong personal reaction to him that bothered her because counsel would be

speaking for defendant, and she did not 'want to be prejudiced with pity' or 'want to kind of overcompensate in [her] own mind.' The court then asked whether she could look past her feelings about defense counsel and look only at the evidence presented during trial, to which she responded, '[T]hat's what I'm saying. I don't know.'

The prosecutor then asked the prospective juror whether she was 'saying that [she] could potentially find the defendant guilty of something simply because [she did not] like his lawyer.' She replied, 'Well, I wouldn't say I don't like him; I don't know him. But, sir, I don't feel like he's any match for you.' When the prosecutor asked whether she would be more likely to convict defendant or whether her feelings would be more likely to work against the prosecution, she responded:

> "That's what I'm telling you. I mean, between, like you, sir, you're obviously a very good attorney and you have a very good rapport with the jury. Your [voir dire] questions were easy to understand. They followed a very straight line. So I have . . . a very positive impression of you.
> . . . .
> And so what I'm saying is I believe that this . . . country is full of people in prison who are there because they did not have good representation. That's something that I believe. And do I find you [the prosecutor] more credible or more believable? Absolutely. But what I'm worried about, more so than that, is that - - I mean, I'm going to be rooting for the [defendant], too, because he's got such a bad lawyer . . . . I worried [sic] twofold; that I'm having a problem with this attorney, and that might bias me; and the other one is that I might be a little too sympathetic to the defendant because of that."

The prosecutor then said to the prospective juror:

> The point is that you have to promise that you could follow the law, and the law is that I have to prove my case beyond a reasonable doubt, so if you're favoring the defendant, or that's what you're worried about, really, that's okay. Because you have to presume him to be innocent, and I have to prove to you that he's guilty beyond a reasonable doubt. Can you follow the law as far as that goes?

The prospective juror responded that she 'would hope so.' The

> prosecutor then asked her whether she would base her decision on the evidence, and the voir dire ended with the following colloquy:
>
>> PROSECUTOR: In other words, what the lawyers say, whether we say it well or not well, is not evidence. What the witnesses say under oath is evidence. Will you base your decision on the evidence?
>>
>> PROSPECTIVE JUROR: Well, you know why I think this is going to be easier, because what you're telling me right now is that you're the only one I have to believe, because [defendant] doesn't have to prove anything.
>>
>> PROSECUTOR: You got that right. [Defendant] has nothing to prove.
>>
>> PROSPECTIVE JUROR: Okay, I think I can do that.
>
> The trial court denied defense counsel's challenge for cause, finding that the prospective juror 'did come across at the end believing that she could be fair,' and the court 'believe[d] this woman will be fair.'

(*People v. O'Donnell* (Respondents' Exhibit D (doc. # 13-3) at pp. 35 of 41)). Mr. O'Donnell alleges that the "erroneous denial of the challenge for cause to the prospective juror, caused the defendant's use of a peremptory challenge to remove the juror, . . . ." (Petition (doc. # 2) at p. 13 of 34). Mr. O'Donnell subsequently exhausted all of his peremptory challenges. (*See* Respondents' Exhibit A (doc. # 13-2) at p. 18 of 40).

The Court of Appeals concluded "that the prosecutor's clarification - - in conjunction with the prospective juror's acknowledgment that she 'would hope' she could base her decision on the law, presume defendant to be innocent, and require the prosecution to prove Defendant's guilt beyond a reasonable doubt - - was sufficient to demonstrate that she was able to set aside any preconceived notion and render a fair

7

and impartial verdict based upon the evidence and the instructions from the court." (*People v. O'Donnell* (Respondents' Exhibit D (doc. # 13-3) at p. 38 of 41)). The Court of Appeals noted that "the trial court was in the best position to assess her responses," and held that the "denial of defendant's challenge for cause was not an abuse of discretion." (*People v. O'Donnell* (Respondents' Exhibit D (doc. # 13-3) at pp. 39 of 41)).

The Sixth Amendment to the United States Constitution, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury . . . ." U.S. Const. amend. VI. The Supreme Court has held "that an impartial jury consists of nothing more than 'jurors who will conscientiously apply the law and find the facts.' " *Lockhart v. McCree*, 476 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). *See also Irwin v. Dowd*, 366 U.S. 717, 723 (1961) ("It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.") (citations omitted).

"[W]here an adversary wishes to exclude a juror because of bias, then, it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality." *Witt*, 469 U.S. at 423 (citation omitted). "It is then the trial judge's duty to determine whether the challenge is proper." *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (where criminal defendant sought to excuse juror for cause and trial judge refused, question was simply "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, . . .").

It is well-settled that "a juror may not be challenged for cause based on his views . . . unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Witt*, 469 U.S. at 420 (capital punishment case) (internal quotation marks, citation, and emphasis omitted). "The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath, notwithstanding his views . . . ." *United States v. Chanthadara*, 230 F.3d 1237, 1270 (10th Cir. 2000) (capital punishment case).

The record supports the Court of Appeals' determination that the trial court properly refused to excuse the prospective juror for cause because she stated she would follow the law and base her decision on the evidence. The Court of Appeals acknowledged that the prospective juror's responses were arguably equivocal. (*People v. O'Donnell* (Respondents' Exhibit D (doc. # 13-3) at pp. 39 of 41)). Under federal law, even where there is ambiguity, the trial court, aided by its assessment of the juror's credibility, may resolve the ambiguity in favor of the State. *See Witt*, 469 U.S. at 434. "In making such a determination, the trial judge must assess the credibility of the prospective juror, a task an appellate court cannot easily do based upon a record." *Moore v. Gibson*, 195 F.3d 1152, 1168 (citations omitted). Despite any "lack of clarity in the printed record, . . . deference must be paid to the trial judge who sees and hears the juror." *Witt*, 469 U.S. at 425-26. *See also Castro v. Ward*, 138 F.3d 810, 824 (10th Cir. 1998) ("Because issues of credibility and demeanor are crucial to the trial judge's determination, our review of that determination is quite deferential.")

"A trial judge's determination of a potential juror's bias under this standard is a

factual finding entitled to a presumption of correctness." *Moore*, 195 F.3d at 1168 (citations omitted). *See also Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) ("state court factual findings are presumptively correct and may be rebutted only by clear and convincing evidence") (citing 28 U.S.C. § 2254(e)(1)) (internal quotation marks and case citation omitted), *cert. denied*, 545 U.S. 1146 (2005). Mr. O'Donnell has failed to rebut the presumption of correctness afforded the state court's finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Further, Mr. O'Donnell's argument that the trial court's improper refusal to excuse the prospective juror for cause forced him to exercise a peremptory challenge to remove this juror does not identify a violation of federal law. *See Thornburg v. Mullin*, 422 F.3d 1113, 1128-29 (10th Cir. 2005) ("Federal habeas review is . . . limited to violations of constitutional rights.") (quoting *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999)). "We have long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 312 (2000) (citations omitted). "But we have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." *Martinez-Salazar*, 528 U.S. at 312 (citations omitted).

Even if the trial court should have removed the prospective juror for cause, any constitutional error was cured when Mr. O'Donnell used a peremptory challenge to remove the juror. *See Martinez-Salazar*, 528 U.S. at 312 (rejecting the position that, without more, "the loss of a peremptory challenge constitutes a violation of the

constitutional right to an impartial jury.") (citation omitted). "[A] defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." *Martinez-Salazar*, 528 U.S. at 317.

Mr. O'Donnell did not lose a peremptory challenge. "Rather, he used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury." *Martinez-Salazar*, 528 U.S. at 313 (citations omitted). "So long as the jury that sits is impartial . . . , the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Martinez-Salazar*, 528 U.S. at 313 (citation omitted). Thus, Mr. O'Donnell's claims also fail because he has failed to show the jurors who sat were not fair and impartial. *See Ross v. Oklahoma*, 487 U.S. 81, 86 (1988).

In sum, the trial court's ruling and the Court of Appeals' decision were not contrary to established federal law or unreasonable determinations of the facts in light of the evidence. Mr. O'Donnell is not entitled to habeas relief.

Accordingly, IT IS RECOMMENDED that the "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2254" (filed April 16, 2007) (doc. # 2) be DENIED and this civil action be dismissed with prejudice.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to

preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 20th day of November, 2007.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge